IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANDERT ALLEN LINDSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL  ACTION  NO.  2:13-CV-485-WHA |
| | ) | |
| DERRICK CUNNINGHAM, SHERIFF, | ) | |
| MONTGOMERY COUNTY,[1] *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is a 42 U.S.C. § 1983 action filed by Plaintiff Andert Lindsey ("Lindsey"),

an inmate who was incarcerated at the Montgomery County Detention Facility in Montgomery,

Alabama when he filed this action. The defendants are Derrick Cunningham, Sheriff of

Montgomery County, Alabama; Colonel Wanda Robinson; and Darryl Bailey. Lindsey alleges that

during his incarceration at the detention facility he was denied adequate medical care, due process,

and access to courts. He seeks damages and declaratory and injunctive relief.[2] Doc. 1.

Defendants Sheriff of Montgomery County and Col. Robinson ("Defendants") filed an

answer, special report, supplemental special report, and evidentiary materials addressing Lindsey's

claims for relief. Docs. 20, 21, 38, 39. In these filings, Defendants deny that they acted in violation

of Lindsey's constitutional rights. *Id.* Defendants also argue that Lindsey's complaint against them

---

[1]  In light of the suggestion of death of Defendant D.T. Marshall (Doc. # 30), Sheriff Derrick Cunningham is substituted for former Sheriff Marshall as the proper defendant. *See* Rule 25(d), *Federal Rules of Civil Procedure.*

[2]   The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).

is due to be dismissed because Lindsey failed to exhaust an administrative remedy available to him at the Montgomery County Detention Facility prior to initiation of this case. Doc. 21 at 6-7, Docs. 38, 39. Defendants base their exhaustion defense on Lindsey's failure to follow the required administrative procedures at the detention facility regarding the claims presented. Doc. 21, Exhs. 2, 3, Doc. 39, Robinson Affidavit. Lindsey responded to Defendants' report, as supplemented. Docs. 26, 35, 36, 41.

Upon receipt of Defendants' supplemented special report, the court issued orders on October 23, 2013, and October 20, 2016, providing Lindsey an opportunity to file a response in which he was advised, among other things, to "specifically address Defendants' argument that he [] failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA")." *See* Doc. 23 at 1 (footnote omitted). The order advised Lindsey that his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. *Id*. at 3. This order further cautioned Lindsey that unless "sufficient legal cause" was shown within ten days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response to this order] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a [dispositive] motion … and (2) after considering any response as allowed by this order, rule on the motion in accordance with law." *Id.* at 3-4. Lindsey responded to Defendants' report, as supplemented. Docs. 26, 35, 36, 41. Thereafter, the court set an evidentiary hearing to make a factual determination regarding whether Lindsey exhausted the administrative remedies available at the detention facility as required under 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"). *See Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) ("Where exhaustion—like jurisdiction, venue, and service of process—is treated as a matter

in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.") (footnotes and citation omitted).

The court will treat Defendants' supplemented report (Docs. 21, 38, 39) as a motion to dismiss regarding the exhaustion defense. *Bryant,* 530 F.3d at 1375) ("[E]xhaustion should be decided on a Rule 12(b) motion to dismiss… ."); *see also Trias v. Florida Dept. of Corrections*, 587 Fed. App'x 531, 534 (11th Cir. 2014) (District court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies… ."). After duly considering all relevant testimony and exhibits against the backdrop of the record, the court concludes that Defendants' motion to dismiss on the issue of exhaustion is due to be granted.

## I. STANDARD OF REVIEW

In addressing the requirements of 42 U.S.C. § 1997e concerning exhaustion, the Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court." *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting *Freeman v. Francis*, 196 F.3d 641, 643-44 (6th Cir. 1999)). This means that "until such administrative remedies as are available are exhausted," a prisoner is precluded from filing suit in federal court. *See id*. (affirming dismissal of prisoner's civil rights suit for failure to satisfy the mandatory exhaustion requirements of the PLRA); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999) ("reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies" before filing suit in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir. 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999) (holding that under the PLRA's amendments to § 1997e(a), "[a]n inmate incarcerated in a state prison ... must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983"); *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of prisoner's civil suit for failure to satisfy the mandatory exhaustion requirements of § 1997e(a)); *Alexander v. Hawk*, 159

3

F.3d 1321, 1328 (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under § 1997e(a) for failure to exhaust administrative remedies prior to filing suit in federal court).

*Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001). The Court has, therefore, determined that "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004). Because exhaustion is mandated by the statute, [a court has] no discretion to waive this requirement. *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998)." *Myles v. Miami-Dade County Correctional and Rehabilitation Dept.*, 476 Fed. App'x 364, 366 (11th Cir. 2012).

"[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). "When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. 'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*citing Bryant*, 530 F.3d at 1373–74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id.* (*citing Bryant*, 530 F.3d at 1373-74, 1376)." *Myles*, 476 Fed. App'x at 366. A district court "may resolve disputed factual issues where necessary to the disposition of a motion to dismiss for failure to exhaust." *Trias*, 587 Fed. App'x at 535.

## II. DISCUSSION

### A. Exhaustion

Lindsey challenges as unconstitutional various conditions to which he was subjected during his incarceration at the Montgomery County Detention Facility. Defendants deny Lindsey's allegations and maintain that this case is subject to dismissal because Lindsey failed to exhaust the administrative remedy provided at the Montgomery County Detention Facility prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander*, 159 F.3d at 1325; *Woodford v. Ngo*, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Id*. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings.... Construing § 1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once

5

administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id*. at 90-91, 93. The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary, an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement ... by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to her. *Id*. at 83-84; *Bryant,* 530 F.3d at 1378 (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'"); *Johnson*, 418 F.3d at 1157 (inmate who files an untimely grievance or spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom*, 223 F.3d at 1261 (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 Fed. Appx. 81, 83 (11th Cir. 2012) (per curiam).

At the evidentiary hearing in this case, the court heard testimony from Defendant Robinson, Director of Detention at the Montgomery County Detention Facility, and plaintiff Lindsey regarding the subject of exhaustion. Defendant Robinson testified that the Montgomery County Detention Facility provides an administrative remedy for inmate complaints in the form of an inmate grievance procedure, and that this procedure was available to all inmates at the detention facility, including Lindsey, at the time of his incarceration in 2013. According to Robinson, inmates may request an inmate grievance form from jail staff and place their completed grievances in an inmate grievance box. The boxes are located throughout the detention center, including the

infirmary. The grievances are collected by jail staff and provided to the jail grievance clerk. Robinson testified that inmate grievance forms are reviewed by the grievance clerk for distribution to appropriate jail staff, who prepare a written response. Robinson indicated that a copy of the jail staff's written response is hand-delivered to the inmate via the inmate mail distribution system. Robinson also said that every inmate grievance form is given a number by the grievance clerk, who retains a file with the original grievance and response. A copy of the grievance and response is also placed in the inmate's file. Defendant Robinson testified that a search of Lindsey's inmate, booking, and medical files, as well as the grievance clerk's files for the period during which Lindsey was in custody at the facility, located no grievances filed by Lindsey.

According to Lindsey's testimony, he submitted at least four grievances while he was incarcerated at the detention facility. At the evidentiary hearing on the motion to dismiss, Defendants submitted into the record copies of these four grievances, which Lindsey had previously filed with the court in support of his opposition to Defendants' dispositive motion. *See* Doc. 35-3 at 3 of 5, Doc. 36-6, Doc. 36-7 at 3 and 4 of 7; Doc. 44, Exhs. 1-4. Lindsey testified that these exhibits are handwritten copies of those that he submitted to the facility. The first of these grievances contains no date in the space provided for this information. Defendant's Exhibit 1. In the space on this grievance form marked "Date/Time of Alleged Incident," Lindsey wrote "From April 8th until present date." Id. Defendants' Exhibit 2 also does not reflect a specific date. Rather, in the space provided for the date, Lindsey wrote "Saturday 29th through." A review of this grievance, however, reflects that it refers to matters which occurred only after Plaintiff filed this lawsuit. Defendants' Exhibits 3 and 4 are both dated "8/24/13."[3]

---

[3]   Although Defendants' Exhibits 3 and 4 each reflect the date of the grievance as August 24, 2013, the court notes that in the space marked "Date/Time of Alleged Incident," Lindsey refers to dates after

As to the remaining grievance, Exhibit 1, Lindsey testified that he was booked into the Montgomery County Detention Facility on April 8, 2013. He does not challenge defendants' claim that a grievance procedure was available at the jail. He also does not dispute that the detention facility's grievance procedure allows an inmate to file a grievance addressing actions occurring or conditions present in the jail by submitting an inmate request form and stating the basis for the grievance. Doc. 21, Exhs. 2, 3; Doc. 39, Robinson Affidavit and Attachments. Lindsey testified that he filed the four grievances submitted on the record by Defendants by putting them in the facility's inmate grievance box at the detention facility. He said that some of these grievances contained no date because he was on lockdown and was unaware of the date. Lindsey testified that he sometimes held his grievance forms for a while before putting them in the inmate grievance box, but said that he submitted several grievances prior to the date he filed his complaint. On cross-examination, Lindsey testified that he left the detention facility for approximately 20 days for a court-ordered mental evaluation 90 days after his arrest and detention. He testified that, while he was not sure when he submitted the grievance marked as Defendants' Exhibit 1 (Doc. 44, Exh. 1), he had submitted a sick call request on May 20, 2013 (*see* Doc. 36-7 at 5 of 7), and he felt he would have submitted that grievance around the same time.

In evaluating this testimony and the entirety of the record in this case under the framework established in *Turner v. Burnside*, the court first considers the plaintiff's and defendants' versions of the facts; if they conflict, the court takes the plaintiff's version of the facts as true. If, in that light, defendants are entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. *Turner*, 541 F.3d at 1082. In the instant case, the plaintiff's and

---

August 24, 2013 – *i.e.*, "8/26" and "8/28." *See* Doc. 44, Exhs. 3, 4.

defendants' versions of the facts do conflict. It is clear that when the plaintiff's testimony that he submitted several grievances at the facility prior to the date on which he filed his complaint in this court is taken as true, defendants are not entitled to have the complaint dismissed for failure to exhaust administrative remedies.

As *Taylor* indicates, if the complaint is not subject to dismissal at the first step, then the court must proceed to make specific findings in order to resolve the disputed factual issues related to exhaustion. *Id*. Based on the evidence of record in this case, the court finds that the Montgomery County Detention Facility provides a procedure for inmates who wish to submit a grievance regarding conditions at the jail. Inmate grievance forms are available in every area of the detention facility and, if forms run out in one area of the facility, jail personnel can obtain them from another area upon request by an inmate. Inmates on lockdown have access to an intercom which they can use to request items from jail staff, including grievance forms. When an inmate at the detention facility submits a grievance, a written response is provided by the appropriate jail official which addresses the grievance, and a copy of this response is given to the inmate. Every inmate grievance form is given a number by the grievance clerk, who retains a file with the original grievance and response; a copy of the grievance and response is also placed in the inmate's file.

The court further finds that three of the four grievances that Lindsey previously filed with the court in support of his opposition to Defendants' dispositive motion were prepared and/or submitted at the detention facility after he filed the complaint that initiated this lawsuit on July 10, 2013. *See* Doc. 44, Exhs. 2-4. Therefore, these grievances have not been properly exhausted. *See Smith v. Terry*, 491 F. App'x at 83 ("'when a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983

9

lawsuit.'") (citing *Brown v. Sikes,* 212 F.3d 1205, 1207 (11th Cir. 2000) (emphasis added));

*Higginbottom*, 223 F.3d at 1261 ("until such administrative remedies as are available are

exhausted," a prisoner is precluded from filing suit in federal court).

The remaining grievance (Doc. 44, Exh. 1) also is not specifically dated. As noted above,

in the space on this grievance form marked "Date/Time of Alleged Incident," Lindsey wrote,

"From April 8th [the date of Lindsey's booking at the facility] until present date." *Id*. While

Lindsey's testimony attempts to tie this grievance to a sick call request containing a date of May

20, 2013, Lindsey also testified that he was unsure when he submitted this grievance, and he has

presented no credible testimony regarding when he actually deposited the grievance in the inmate

grievance box. Indeed, Lindsey seems to have observed no consistent practice in dating the copies

of grievances that he allegedly submitted. It is clear, for example, with regard to Exhibits 3 and 4,

that the date inscribed on these forms is not consistent with the contents of the grievances. *See* n.

3, *supra*. Further, Lindsey has offered no evidence that detention facility staff ever actually

received Exhibit 1 or any other grievance from him during his incarceration at the jail. Instead, as

previously noted, Defendant Robinson's testimony indicates that a search of the detention facility's

records – including Lindsey's medical and booking records, his inmate file, and the grievance

clerk's files – failed to uncover any grievances submitted by Lindsey during his incarceration at

the detention facility. The detention facility's records also reflect no responses to such grievances,

and Lindsey himself has not produced any such response, even though Robinson indicated that a

copy of the jail staff's written responses would have been hand-delivered to him via the inmate

mail distribution system. Finally, Lindsey's testimony that he did not date the grievance in question

because he was on lockdown for a period of time and unaware of the day or time conflicts with,

and therefore renders less credible, his testimony seeking to correlate the dated sick call request to the undated grievance.

Thus, based on the evidence in the record and the testimony presented at the evidentiary hearing, the court finds that Lindsey failed to exhaust the grievance procedure provided at the Montgomery County Detention Facility. *See Woodford*, 548 U.S. 84-851 (to exhaust administrative remedies, an inmate must comply with all steps prescribed by the jail's grievance system); *see also Brewington v. Daniels*, 2012 WL 6005780 *4-5 (M.D. Ala. 2012) (inmate's conclusory assertion that he complied with grievance procedures but medical staff failed to timely respond to his initial medical grievance insufficient to overcome defendants' evidence showing that a grievance system was available for plaintiff's claims); *Maclary v. Carroll*, 142 Fed. Appx. 618, 620 (3rd Cir. 2005) (inmate's unsupported conclusory allegations that he filed grievances which went unanswered and unprocessed were insufficient to overcome defendants' evidence that he failed to exhaust available administrate remedies). Defendants, therefore, have carried their burden of demonstrating that Lindsey failed to exhaust his administrative remedies in accordance with the facility's grievance procedure, and Lindsey has presented nothing to justify his failure to exhaust this administrative remedy. Defendants' motion to dismiss is due to be granted on the issue of exhaustion.

It is likewise clear that Lindsey is no longer at the detention facility, and his access to the grievance procedure has ceased; thus, the administrative remedy provided by Defendants is no longer available to him. Under these circumstances, dismissal with prejudice is appropriate. *Bryant*, 530 F.3d at 1375 n.1; *Johnson*, 418 F.3d at 1157; *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely

11

one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits ... properly dismissed with prejudice" where previously available administrative remedies had become unavailable).

### B. Defendant Bailey

On July 12, 2013, the court entered an order of procedure directing service of the complaint on Defendant Bailey and requiring him to file an answer and written report responding to Lindsey's complaint. Doc. 4. Service was attempted on Bailey but was not perfected because he was unknown at the address provided by Lindsey. *See generally* Rule 4(m), *Federal Rules of Civil Procedure*. Further, even had service been perfected on Bailey, the court finds that the complaint against him is due to be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Defendant Bailey is the Chief Deputy District Attorney for Montgomery County, Alabama. *See* Doc. 21 at Exh. 1 (Attachments). To the extent that Lindsey challenges Bailey's conduct in initiating and prosecuting criminal charges against him, he is entitled to no relief. "A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). "The prosecutorial function includes the initiation and pursuit of criminal prosecution, *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976), and all appearances before the court, including examining witnesses and presenting evidence. *See Burns v. Reed*, 500 U.S. 478, 492 (1991)." *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir. 2002); *see also Mastroianni v. Bowers*, 60 F.3d 671, 676 (11th Cir. 1998). This immunity is applicable even where the prosecutor acts "maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence."

*Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986); *accord, Prince v. Wallace*, 568 F.2d 1176, 1178-79 (5th Cir. 1978).

Lindsey's claims against Defendant Bailey, to the extent that they arise from this Defendant's role "as an advocate for the state," are "intimately associated with the judicial phase of the criminal process." *Mastroianni*, 60 F.3d at 676. (citations omitted). Bailey is "entitled to absolute immunity for that conduct." *Id*. Lindsey's complaint for damages against Bailey is, therefore, due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i). *See Neitzke v. Williams*, 490 U.S. 319 (1989).

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.   Defendants' motion to dismiss (Doc. 21) be GRANTED to the extent that Defendants seek dismissal of this case due to Lindsey's failure to properly exhaust an administrative remedy available to him at the Montgomery County Detention Facility prior to initiating this cause of action;

2.   This case be DISMISSED with prejudice under 42 U.S.C. § 1997e(a) for Lindsey's failure to properly exhaust an administrative remedy available to him at the Montgomery County Detention Facility;

3.   The complaint against Defendant Bailey be DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i);

4.   No costs be taxed.

It is further

ORDERED that **on or before February 15, 2017**, the parties may file an objection to this Recommendation. A party must specifically identify the factual findings and legal conclusions in

13

the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 1st day of February, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
Chief United States Magistrate Judge